**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JUAN IDROVO, | : | **CIVIL ACTION NO.:** |
| | : | |
| *Plaintiff,* | : | |
| | : | |
| vs. | : | |
| | : | **JURY TRIAL DEMANDED** |
| | : | |
| BFI Waste Services of Pennsylvania, LLC | : | |
| d/b/a Allied Waste Services of Valley | : | |
| Forge/Republic Services of King of Prussia/ | : | |
| Republic Services of Valley Forge | : | |
| | : | |
| *Defendant.* | | |

## **COMPLAINT**

### **I.    PRELIMINARY STATEMENT**

1.    This is an action for an award of damages, declaratory and injunctive relief, reinstatement, attorney's fees, and other relief on behalf of Plaintiff, Juan Idrovo ("Plaintiff"), a former employee of Defendant, BFI Waste Services of Pennsylvania, LLC d/b/a Allied Waste Services of Valley Forge / Republic Services of King of Prussia / Republic Services of Valley Forge, ("Defendant" or "Republic") who has been harmed by Defendant's unlawful employment practices.

2.    Plaintiff alleges that that prior to and continuing through the present, the Defendant, through its agents, servants, and employees, subjected him to discrimination and retaliation because of his age, his national origin (Ecuador) and his race (Hispanic). Instead, Plaintiff believes and avers that Defendant terminated him based on his aforestated protected characteristics and and/or retaliated against Plaintiff for his engagement in protected activity. Furthermore, upon information and belief, Defendant replaced Plaintiff with a significantly younger individual.

1

3. Additionally, Plaintiff asserts that he was not reimbursed for his Paid Time Off upon his termination, which was due according to Company policies, upon information and belief.

4. This action is brought under the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964, the Pennsylvania Human Relations Act ("PHRA"), Pennsylvania Wage Payment and Collection Law ("PWPCL") and Pennsylvania common law wrongful discharge.

## II.    JURISDICTION AND VENUE

5. The original jurisdiction of this Court is invoked, and venue is proper in this district, pursuant to Title 28 U.S.C. §§1331 and 1391, as Plaintiff's claims are substantively based on the ADA, Title VII and the ADEA.

6. The supplemental jurisdiction of this Court is invoked pursuant to Title 28 U.S.C. § 1367, to consider the Plaintiff's claims arising under the PHRA, the PWPCL, and Pennsylvania common law.

7. All conditions precedent to the institution of this suit have been fulfilled. Specifically, Plaintiff filed timely Charge No. 530-2023-02777, with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a Notice of Right to Sue on or about August 28, 2023.  This action is filed within ninety (90) days of the Right to Sue.

## III.    PARTIES

8. Plaintiff, Juan Idrovo, is a male individual, residing in the Commonwealth of Pennsylvania with a place of address located at 98 South Sixth Avenue, Coatesville, PA 19320.

9. Defendant, BFI Waste Services of Pennsylvania, LLC d/b/a Allied Waste Services of Valley Forge / Republic Services of King of Prussia / Republic Services of Valley Forge,

("Republic") provides non-hazardous solid waste and recycling services for commercial, industrial, municipal, and residential customers. Republic's Valley Forge Division, where Mr. Idrovo was employed, is located in King of Prussia, Pennsylvania.

10.     Defendant employs greater than 100 employees in Pennsylvania.

11.     At all times material and relevant hereto, Defendant acted by and through its agents, employees, and/or servants who acted within the scope of their authority, course of employment, and under the direct control of the Defendant.

12.     At all times material and relevant hereto, Defendant acted as a "person" and "employer" under the applicable statutes, including the ADEA, Title VII and the PHRA, and is accordingly subject to the provisions of each said Act.

## STATEMENT OF FACTS

13.     Plaintiff worked as a commercial front load truck driver hauling garbage waste for Defendant and or its predecessors for over thirty years.

14.     Plaintiff has a Commercial Driver's License ("CDL") and his hours of driving time are strictly regulated in accordance with PENNDOT regulations incorporating the driving time limitations set forth in the Federal Motor Carriers Safety Administration ("FMCSA"), 49 CFR Part 395, for intrastate carriers.

15.     He was a safe and excellent driver who had no accidents or other safety concerns during that thirty-year period.

16.     Despite his long-standing clean driving record, within the last year of his working, Defendant targeted Plaintiff, finding any small issue to criticize and for which to issue warnings on a pretextual basis.

3

17.    Prior to his last year of employment, Juan had no history of on-road accidents or warnings but, starting in or around May 2022, Defendant started issuing multiple warnings.

18.    Each year, a driver's history would clear, and Plaintiff believes, the company intentionally looked for any way to penalize him until he was ultimately terminated in early January 2023, just as the year began, giving him as many citations as they could within a short time frame.

19.    For example, on or about May 26, 2022, Plaintiff had pulled the truck over to address issues with the trash lever when he discovered a hydraulic fluid leak, which he reported. He received a warning for having a PTO light on his truck, which was common for all drivers and not a safety concern. They asserted he somehow should have identified the hydraulic leak sooner, although it was dark and he could not see it.

20.    His supervisor issued a warning on September 19, 2022, after Plaintiff informed her that he could not change his route to drop off his final load at a farther location as he would exceed his maximum hours for driving the truck.

21.    Plaintiff was given the heaviest route amongst all the drivers going into the final year of his employment. Prior to being given this new route, he often completed two to three loads per day depending on the garbage volume. During his last year, he often had three to four loads/day.

22.    This heavy load effected his outside schedule as he was also required to take a 30-minute lunch break. While he formally took these breaks, often at late hours in the day, his break consisted of having lunch while at the shop where he was often filling gas or

4

inspecting/prepping the truck for the following day. He had to use his personal time to still complete job duties.

23.     While his supervisors did not articulate that they wanted Idrovo to work over fourteen hours/day, by the end of each week, each Friday, he often hit his 60-hour limit as a result of the load.

24.     It was rare that he could finish his route each week which led to him being penalized.

25.     During his employment, Juan often asked his supervisor to send a driver to help finish his route which she would dismiss.

26.     On or about October 17, 2022, Plaintiff was written up for not servicing the Greene Country Village stop, although his supervisor knew that he could not reach that stop without exceeding his maximum hours.

27.     In fact, he had been told not to worry about the stop with the understanding that Defendant would have to send another driver to service it. When the customer called to complain, the supervisor penalized Plaintiff with a warning although he could not have safely serviced the location and she knew it.

28.     During the past year, Plaintiff was given other warnings for not completing routes that he could not complete safely under the applicable regulations.

29.     Defendant never reduced the number of stops on his route, despite his requests. If they did, they never informed him and his stops were not otherwise serviced.

30.     Ultimately, on or about January 9, 2023, his supervisor asked him to reroute his stops while he was already on the road. While he did not refuse to reroute the stops, he could not immediately do so as he was driving. Also, he knew that he would not finish the

route if he followed her request, as he was aware of the traffic patterns and conditions along the route, and likely would have been fired for not completing the route.

31.     Nevertheless, he was immediately subjected to termination.

32.     Upon information and belief, Defendant continues to use the same routes for the stops that he was using.

33.     Upon information and belief, Defendant terminated Plaintiff in a discriminatory manner for a pretextual reason.

34.     Plaintiff was one of the truck drivers who had been at the company for the longest period of time and was pushed out for pretextual reasons and replaced with, upon information and belief, a significantly younger worker.

35.     Upon information and belief, Defendant has a pattern and practice of replacing older workers with significantly younger workers.

36.     Plaintiff has worked at the company for over 30 years. He has never had an accident and has followed safety procedures.

37.     Oftentimes, he went years without using the entirety of the vacation weeks he was given. They would not approve his vacations at times.

38.     Upon information and belief, Defendant now has two drivers servicing the same routes he was expected to service himself.

39.     Plaintiff believes that the company was in search of any minor reason that could give them reason to terminate him.

40.     Defendant engages in the pattern and practice of treating Hispanic workers differently.

41.     For example, they push Hispanic workers to work extra hours beyond the allowed fourteen hours per day; whereas, they do not push non-Hispanic workers to work

6

longer hours. Plaintiff's supervisor would push him on a regular basis to work more hours than company policy allowed.

42.    Plaintiff was treated differently on the basis of his race and national origin, which was a motivating factor in his termination.

## COUNT I
### ADEA –Age Discrimination

43.    Plaintiff hereby incorporates by reference the foregoing paragraphs of his Complaint as though fully set forth herein.

44.    The actions of Defendant, through their agents, servants, and employees, in engaging in harassment and discrimination based on Plaintiff's age.

45.    Plaintiff is over forty years old.

46.    Defendant had no legitimate reason for terminating his employment and any articulated reason was merely a pretext for discrimination or retaliation.

47.    Upon information and belief, Defendant replaced Plaintiff with a significantly younger individual.

48.    Plaintiff engaged in protected conduct in reporting his mistreatment and was subjected to retaliation, up to and including his unlawful discharge.

49.    The aforesaid actions of Defendant were willful, wanton, reckless, and/or in bad faith and in reckless disregard of the Plaintiff's rights.

50.    As a direct result of the aforesaid unlawful and willful discriminatory and retaliatory employment practices engaged in by the Defendant in violation of the ADEA, Plaintiff has sustained permanent and irreparable harm.

51.    As a further direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by Defendant in violation of the ADEA,

7

Plaintiff suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT II
## PHRA
### Age Discrimination

52. Plaintiff hereby incorporates by reference the foregoing paragraphs of his Complaint as though fully set forth herein.

53. The actions of Defendant, through their agents, servants, and employees, in engaging in harassment and discrimination based on Plaintiff's age.

54. Plaintiff is over forty years old.

55. Defendant had no legitimate reason for terminating his employment and any articulated reason was merely a pretext for discrimination or retaliation.

56. Upon information and belief, Defendant replaced Plaintiff with a significantly younger individual.

57. Plaintiff engaged in protected conduct in that he reported his mistreatment and was subjected to retaliation, up to and including his unlawful discharge.

58. The aforesaid actions of Defendant were willful, wanton, reckless, and/or in bad faith and in reckless disregard of the Plaintiff's rights.

59. As a direct result of the aforesaid unlawful and willful retaliatory employment practices engaged in by the Defendant in violation of the PHRA, Plaintiff has sustained permanent and irreparable harm.

60. As a further direct result of the aforesaid unlawful retaliatory employment practices engaged in by Defendant in violation of the PHRA, Plaintiff suffered severe emotional distress, embarrassment, humiliation and loss of self-esteem.

**COUNT III**
**Title VII –Race, National Origin (Hispanic, Ecuador) Discrimination**

61.     Plaintiff hereby incorporates by reference the foregoing paragraphs of his Complaint as though set forth here in full.

62.     Title VII prohibits discrimination on the basis of race and national origin.

63.     Defendant engaged in the pattern and practice of discrimination on the basis of race/national origin.

64.     Defendant treated other similarly situated employees better.

65.     Defendant further treated him differently from similarly situated non-Hispanic employees.

66.     Plaintiff's work was overscrutinized and criticized although he had the skills and abilities to perform it.

67.     The actions of Defendant, through its agents, servants, and employees, in subjecting Plaintiff to discrimination and retaliation on his terms, conditions, and privileges of employment on the basis of race, national origin (Hispanic, Ecuador) constitutes a violation of Title VII.

68.     As a direct result of the unlawful discriminatory and retaliatory employment practices engaged in by the Defendant in violation of Title VII, Plaintiff has sustained permanent and irreparable harm, as well as severe emotional distress.

69.     Plaintiff has also sustained a loss of earnings and benefits, plus the loss of future earning power, plus back pay, and interest due thereupon.

9

## COUNT IV
## PHRA –Race, National Origin(Hispanic, Ecuador) Discrimination

70.     Plaintiff hereby incorporates by reference the foregoing paragraphs of his Complaint as though set forth here in full.

71.     PHRA prohibits discrimination on the basis of race and national origin.

72.     Defendant engaged in the pattern and practice of discrimination on the basis   of race/national origin.

73.     Defendant treated other similarly situated employees better.

74.     Defendant further treated him differently from similarly situated non-Hispanic employees.

75.     Plaintiff's work was overscrutinized and criticized although he had the skills and abilities to perform it.

76.     The actions of Defendant, through its agents, servants, and employees, in subjecting Plaintiff to discrimination and retaliation on his terms, conditions, and privileges of employment on the basis of race, national origin (Hispanic, Ecuador) constitutes a violation of PHRA.

77.     As a direct result of the unlawful discriminatory and retaliatory employment practices engaged in by the Defendant in violation of PHRA, Plaintiff has sustained permanent and irreparable harm, as well as severe emotional distress.

78.     Plaintiff has also sustained a loss of earnings and benefits, plus the loss of future earning power, plus back pay, and interest due thereupon.

## COUNT V (COMMON LAW)
## WRONGFUL DISCHARGE

79.     Plaintiff hereby incorporates by reference the foregoing paragraphs of his Complaint as though fully set forth herein.

10

80.    Pennsylvania has other codified anti-retaliation provisions, for example, the law that protects commercial truck drivers. See 75 Pa. Cons. Stat. Ann. § 1619 (West 2011) (prevents adverse job action because an employee (a) refuses to operate a commercial vehicle in accordance with state safety laws, (b) has filed a complaint or instituted a proceeding relating to a violation of the state safety laws, or (c) has a "reasonable apprehension of serious injury to himself or the public due to the unsafe condition" of the vehicle or equipment).

81.    Pennsylvania has further adopted federal rules regarding the limits the numbers of hours a truck driver can drive per week. 67 Pa. Code § 231.7.

82.    Defendant was disciplined for refusing to violate said laws, leading up to his wrongful termination.

83.    Retaliating against a truck driver for refusing to drive in excess of the maximum number of hours is a violation of public policy.

84.    Defendant retaliated against Plaintiff as set forth herein and discharged him and/or constructively discharged him in violation of the public policy, which is improper conduct by officers of the Defendant inconsistent with laws and public policies of the Commonwealth of Pennsylvania.

85.    As a direct result of the unlawful employment   practices engaged in by the Defendant in violation of public policy, Plaintiff has sustained permanent and irreparable harm, as well as severe emotional distress.

86.    Plaintiff has also sustained a loss of earnings and benefits, plus the loss of future earning power, plus back pay, and interest due thereupon.

## COUNT VI
## VIOLATION OF THE
## WAGE PAYMENT AND COLLECTION LAW

87.     Plaintiff incorporates by reference the allegations of the preceding paragraphs of this Complaint.

88.     Defendants failed to pay Plaintiff wages pursuant to its obligations under the WPCL.

89.     Specifically, Plaintiff had unused Paid Time Off (PTO) at the time of his termination for which he was not compensated.

90.     Upon information and belief, Defendant has a policy and/or practicing of reimbursing employees for unused PTO.

91.     Defendants failed to pay Plaintiff all of his wages on or before their due date.

92.     Accordingly, Defendants owe Plaintiff said earned commissions.

93.     As result of Defendants' failure to pay wages as due, Plaintiff has suffered damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this Court enter judgment in his favor against the Defendant, and order that:

a.      Defendant reinstate Plaintiff in his former employment position;

b.      compensates Plaintiff with a rate of pay and other benefits and emoluments of employment, to which he would have been entitled, had he not been subjected to unlawful discrimination (all Counts);

c.      Defendant compensate Plaintiff with an award of back pay (all Counts);

d.      Defendant compensate Plaintiff with an award of front pay, if appropriate (all

12

Counts);

e.      Defendant pay Plaintiff punitive damages, statutory damages, liquidated damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses as allowable (all Counts);

f.      Defendant pay Plaintiff liquidated damages (Count VIII- ADEA);

g.      Defendant pays to Plaintiff pre- and post-judgment interests, costs of suit, and attorney fees as allowed by law (all Counts); and

h.      The Court award other such relief as is deemed just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

**HENNESSY LAW**

*s/ Kay Hennessy Seven*

_____

KAY HENNESSY SEVEN, ESQUIRE
I.D. NO.: 77262
Hennessy Law
101 Lindenwood Drive, Suite 225
Malvern, PA 19355
Phone: 484-875-3111
Fax:  1-484-713-5185
Kay@Hennessylawfirm.com

November 27, 2023

## VERIFICATION

I, Juan Idrovo, hereby verify that the above referenced averments are true and accurate to the best of my recollection, information and belief.

**ID q9S7ejxiShoU8d9LAH9hVyGB**

_____

Juan Idrovo

11/27/2023

14

# eSignature Details

**Signer ID:**        **q9S7ejxiShoU8d9LAH9hVyGB**
Signed by:        Juan Idrovo
Sent to email:        juan0@verizon.net
IP Address:        108.52.34.136
Signed at:        Nov 27 2023, 6:34 pm EST